UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RICHARD PERRY, JANE DOE PERRY
(minor child) and JOHN DOE PERRY
(minor child),

               Plaintiffs,

      -v-

ERIE COUNTY SUPREME COURT,
AMY MARTOCHE, MARY SLISZ,
AMY LEACH, KEITH KADISH, and
JOHN TRIGILIO,

             Defendants.
_____

**DECISION AND ORDER**

1:23-CV-00848 EAW

## <u>INTRODUCTION</u>

Plaintiff Richard Perry ("Plaintiff"), an attorney representing himself, commenced this case on behalf of himself and his minor children Jane Doe Perry and John Doe Perry (collectively "Plaintiffs"), seeking relief from defendants Erie County Supreme Court, New York State Supreme Court Justice Amy Martoche ("Justice Martoche"), New York State Supreme Court Justice Mary Slisz ("Justice Slisz"), Amy Leach ("Leach"), Keith Kadish ("Attorney Kadish"), and John Trigilio ("Attorney Trigilio") (collectively "Defendants") under 42 U.S.C. § 1983 for deprivations of Plaintiffs' constitutional rights. (Dkt. 1).

Before the Court is: a motion to dismiss by the Erie County Supreme Court, Justice Martoche, and Justice Slisz (collectively "State Defendants") (Dkt. 3), a motion to dismiss

by Attorney Kadish (Dkt. 6), a motion to dismiss by Attorney Trigilio (Dkt. 11), and a motion to dismiss by Leach (Dkt. 13).  Plaintiffs did not file any opposition to the pending motions.

For the reasons below, the motions to dismiss are granted.

## DISCUSSION

### I.  Factual Background

The following facts are taken from Plaintiffs' complaint (Dkt. 1).  As required on a motion to dismiss, the Court treats any well-pleaded factual allegations as true and draws all inferences in Plaintiffs' favor.

Plaintiff and Leach are married.  (*Id.* at ¶ 13).  Plaintiff is a disabled veteran with undifferentiated sleep apnea and depressive disorder.  (*Id.* at ¶¶ 14, 15).  Plaintiff and Leach have two children together, Plaintiff Jane Doe Perry and Plaintiff John Doe Perry.  (*Id.* at ¶ 17).  In 2019, Plaintiff and Leach decided to divorce and began mediating their separation in 2020, resulting in a draft separation agreement.  (*Id.* at ¶¶ 18, 19).  The draft separation agreement provided for shared custody, with each parent having the children half of the time.  (*Id.* at ¶ 20).

In April 2020, Plaintiff moved into a new residence.  (*Id.* at ¶ 21).  Leach immediately moved a new boyfriend and his two daughters into the home she had shared with Plaintiff, over Plaintiff's objections.  (*Id.* at ¶ 23).  Throughout spring and summer of 2020, the children were with Plaintiff during work hours, in addition to the time provided for in the separation agreement.  (*Id.* at ¶ 26).

On September 15, 2021, Leach sent Plaintiff a text message informing him that she would not allow the children to come to his home again and if he had a problem with that, he could take it up with Attorney Kadish.  (*Id.* at ¶¶ 27, 28).  Plaintiff retained Attorney Trigilio to represent him.  (*Id.* at ¶ 29).  Attorney Trigilio informed Plaintiff that there was a telephonic preliminary conference scheduled with the court in October 2021.  (*Id.* at ¶ 30).  Attorney Trigilio advised Plaintiff that he was not sure what would be discussed at the conference or whether Plaintiff's attendance was required.  (*Id.* at ¶¶ 31, 32).  Plaintiff called in to the conference at the appointed time and was notified it was for attorneys only.  (*Id.* at ¶ 33).  Afterward, Attorney Trigilio informed Plaintiff about a preliminary order issued by Justice Slisz at the conference.  (*Id.* at ¶ 34).  The preliminary order provided that Plaintiff would have access to his children on Saturday or Sunday at a restaurant for a meal and that he was prohibited from consuming alcohol for at least 12 hours before the visitation.  (*Id.* at ¶ 36).  The preliminary order also directed Plaintiff and Leach to communicate through a third party "Family Wizard" app.  (*Id.* at ¶ 36).  The preliminary order provided no justification for these directives.  (*Id.* at ¶ 41).

In April 2022, Plaintiff traveled out of state to assist with his father's cancer treatment.  (*Id.* at ¶ 49).  While there, Attorney Trigilio contacted Plaintiff to notify him about another court conference scheduled for later that week.  (*Id.* at ¶ 50).  Because Plaintiff could not be present, Plaintiff asked Attorney Trigilio what the conference would address and was given only vague uninformative answers.  (*Id.* at ¶¶ 51, 52).  Upon information and belief, Justice Slisz, Leach, Attorney Kadish, and Attorney Trigilio were all present at the conference.  (*Id.* at ¶ 53).  Attorney Trigilio then sent Plaintiff a copy of

an order issued by Justice Slisz, dated April 29, 2022, that permitted Plaintiff visitation with his children only at a specific restaurant on Sundays between 11 a.m. and 1 p.m. and demanded that Plaintiff surrender any firearms in his possession.  (*Id.* at ¶¶ 54-56).  The April 29 order also required Plaintiff to pay additional child support and Attorney Kadish's attorneys' fees.  (*Id.* at ¶¶ 59, 60).  Much like the preliminary order, it did not explain the reasons for the deprivations.  (*Id.* at ¶ 63).

Plaintiff contacted Attorney Trigilio demanding to know how the April 29 order could be issued without notice to him or an opportunity for him to be heard.  (*Id.* at ¶ 68). Attorney Trigilio said that there may be some sort of motion he could file, but he seemed disinterested in doing so.  (*Id.* at ¶ 69).  At this point, Plaintiff's depression and anxiety became so severe that he took a leave of absence from the practice of law.  (*Id.* at ¶ 70).

Justice Martoche was assigned to the divorce proceedings in September 2022.  (*Id.* at ¶ 71).  In a proceeding intended to address the removal of Attorney Trigilio as counsel, Justice Martoche ordered Plaintiff to provide medical information to the attorney for his children, ostensibly at Attorney Kadish's request.  (*Id.* at ¶ 72).  Justice Martoche took a belligerent stance against Plaintiff and aligned herself with Leach's position.  (*Id.* at ¶ 74).

In November 2022, Plaintiff retained new counsel and first learned of the omnibus motion filed by Attorney Kadish on behalf of Leach, which led to the April 29, 2022 order. (*Id.* at ¶ 79).  For the first time, Plaintiff saw the supporting declarations of Attorney Kadish and Leach, which contained false and speculative allegations.  (*Id.* at ¶¶ 80, 82).  For example, Leach stated that Plaintiff was charged with felony DWI but Plaintiff was charged with nothing higher than a misdemeanor.  (*Id.* at ¶¶ 84, 85).  Attorney Kadish's declaration

- 4 -

also contained sworn false assertions.  (*Id.* at ¶ 91).  Plaintiff learned that Attorney Trigilio never made the court aware of Plaintiff's objections to the preliminary order or the April 29, 2022 order.  (*Id.* at ¶ 81).

Plaintiff raised concerns about the information contained in these declarations to Justice Martoche in April 2022.[1]  (*Id.* at ¶ 92).  Justice Martoche never addressed Plaintiff's concerns.  (*Id.* at ¶ 93).  Instead, Justice Martoche questioned Plaintiff about firearms and swords and ordered Plaintiff to surrender two swords in his possession.  (*Id.* at ¶ 94).  Justice Martoche also required Plaintiff to pay Attorney Kadish's attorneys' fees.  (*Id.* at ¶ 95).  Plaintiff filed charges of judicial misconduct against Justice Martoche and Justice Slisz, as well as ethical violations against Attorney Kadish and Attorney Trigilio.  (*Id.* at ¶ 99).  Justice Martoche failed to recuse herself despite being apprised of the charges filed by Plaintiff.  (*Id.* at ¶ 101).

Plaintiff asserts four § 1983 claims against all Defendants.  The first cause of action is for violation of Plaintiff's constitutional right to equal protection arising from Plaintiff's exclusion from court conferences and Leach being treated more favorably; the second cause of action is for violation of Plaintiffs' fundamental liberty interests in their right to freedom of association; the third cause of action is for violation of Plaintiff's Second and Fourth Amendment rights to bear arms; and the fourth cause of action is for violation of Plaintiffs' due process rights.

---

[1]     The Court presumes that 2022 is a typographical error and that Plaintiff intended the paragraph to reflect incidents in April 2023.  Any discrepancy is not material to the matters before the Court on the pending motions.

## II.   <u>Procedural Background</u>

Plaintiff commenced the instant action on August 17, 2023.  (Dkt. 1).  On November 10, 2023, the State Defendants moved to dismiss (Dkt. 3) and a briefing schedule was entered setting December 4, 2023, as Plaintiffs' deadline to respond to the motion (Dkt. 4). On November 15, 2023, Attorney Kadish moved to dismiss (Dkt. 6), and a briefing schedule was entered setting December 6, 2023, as Plaintiffs' deadline to respond to the motion (Dkt. 8).  On November 21, 2023, Attorney Trigilio moved to dismiss (Dkt. 11), and a briefing schedule was entered setting December 13, 2023, as Plaintiffs' deadline to respond to the motion (Dkt. 12).  On November 27, 2023, Leach moved to dismiss (Dkt. 13), and a briefing schedule was entered setting December 18, 2023, as Plaintiffs' deadline to respond to the motion (Dkt. 14).

On December 18, 2023—after the response deadlines for three of the pending motions—Plaintiffs filed a motion for extension of time to respond to the pending motions to dismiss.  (Dkt. 17).  The Court entered a Text Order denying the motion without prejudice, on the grounds that Plaintiffs' motion did not meet the requirements of the Local Rules of Civil Procedure or contain sufficient information about the relief sought, particularly in light of Plaintiffs' failure to comply with prior Court deadlines.  (Dkt. 18). Plaintiffs did not renew the motion for an extension of time or otherwise respond to any of the pending motions.  Replies were filed by the State Defendants (Dkt. 15), Attorney Kadish (Dkt. 16), and Leach (Dkt. 19).

# DISCUSSION

## I.    Legal Standards

### A.    Rule 12(b)(1)

"Subject matter jurisdiction is a threshold question that must be resolved before proceeding to the merits." *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (quotation and alteration omitted).   "A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it . . ."   *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.á.r.l,* 790 F.3d 411, 416-17 (2d Cir. 2015) (quotation and citation omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."   *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "When considering a motion to dismiss for lack of subject matter jurisdiction . . . a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir. 1998); *see also Tandon v. Captain's Cove Marina of Bridgeport, Inc.,* 752 F.3d 239, 243 (2d Cir. 2014) ("In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction."). *Cf. Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (when a Rule 12(b)(1) motion is fact-based, evidence beyond the pleadings may be considered).

### B.      Rules 12(b)(2) and 12(b)(5)

"[A] Rule 12(b)(5) motion challenges the mode of delivery or the lack of delivery of the summons and complaint." *Coon v. Shea*, No. 2:14-CV-85, 2014 WL 5847720, at *4 (D. Vt. Sept. 5, 2014) (quotation omitted), *report and recommendation adopted in relevant part*, No. 2:14-CV-85, 2014 WL 5849053 (D. Vt. Nov. 12, 2014).   "Objections pursuant to Rule 12(b)(2) concern lack of personal jurisdiction, which results when a summons and complaint have not been served on the defendant pursuant to Rule 12(b)(5)." *Jackson v. City of N.Y.*, No. 14-CV-5755 GBD KNF, 2015 WL 4470004, at *4 (S.D.N.Y. June 26, 2015) (quotation omitted); *Fantozzi v. City of New York*, 343 F.R.D. 19, 25 (S.D.N.Y. 2022) ("While Rules 12(b)(5) and 12(b)(2) are independent bases upon which dismissal may be granted, when service of process is at issue, they are closely interrelated." (internal quotation and citation omitted)); *see also* C. Wright, A. Miller, & M. Kane, 5B Fed. Prac. & Proc. Civ. § 1353 (3d ed.) ("Although the questions of personal jurisdiction and service of process are closely interrelated, service of process is merely the means by which a federal court gives notice to the defendant and asserts jurisdiction over him.").

A plaintiff bears the burden of proving that service was effective on a Rule 12(b)(5) motion to dismiss.   *Ahluwalia v. St. George's Univ., LLC*, 63 F. Supp. 3d 251, 260 (E.D.N.Y. 2014) (quotation omitted), *aff'd*, 626 F. App'x 297 (2d Cir. 2015); *Sunset Homeowners Ass'n, Inc. v. DiFrancesco*, No. 1:19-CV-00016 EAW, 2019 WL 1597497, at *6 (W.D.N.Y. Apr. 15, 2019) ("When a defendant raises a Rule 12(b)(5) challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy." (internal quotations and citations omitted)).   A court may consider matters outside the

pleadings to assess the sufficiency of service on a Rule 12(b)(5) motion. *Wilson v. Cuomo*, No. CV214815(GRB)(AYS), 2022 WL 4644695, at *3 (E.D.N.Y. Aug. 28, 2022), *report and recommendation adopted*, 2022 WL 4662825 (E.D.N.Y. Sept. 30, 2022).

### C.     Rule 12(b)(6)

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the [pleading], documents attached to the [pleading] as exhibits, and documents incorporated by reference in the [pleading]." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the [claimant]." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a [pleading] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a [claimant]'s obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted).  "To state a plausible claim, the [pleading]'s '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen*

*v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

Although "a court is ordinarily obligated to afford a special solicitude to *pro se* litigants," this allowance does not normally extend to a lawyer representing himself. *Bank v. Sirlin*, 830 F. App'x 690, 690 (2d Cir. 2020) ("Bank is an attorney representing himself and thus he is not entitled to special solicitude") (citing *Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010)). Plaintiff, an attorney admitted to practice before this Court, elected to commence this litigation on his own and act as his own attorney. He is held to the same standards and expected to comply with the same requirements applicable to all attorneys appearing before the Court.

A failure to respond to a motion to dismiss pursuant to Rule 12(b)(6) cannot constitute "default" justifying dismissal of the complaint. *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000). "[A]lthough a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *Id.* at 322–23. Thus, "[i]f a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." *Id.* at 323.

### D.   Section 1983 Claims

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws

of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

## II.   Sovereign Immunity[2]

The State Defendants argue that sovereign immunity bars Plaintiffs' § 1983 claims. The Court agrees that sovereign immunity bars Plaintiffs' claims against the Erie County Supreme Court and Justices Martoche and Slisz, who are sued in their official capacities. (*See* Dkt. 1 at ¶¶ 6 & 7 (naming Justices Martoche and Slisz in their official capacities as New York state judges)).

"Absent a waiver on the part of the state, or a valid congressional override, the eleventh amendment prohibits federal courts from entertaining suits by private parties against the states." *Farid v. Smith*, 850 F.2d 917, 920-21 (2d Cir.1988) (citing *Kentucky v.*

---

[2]   "[I]t appears to be a factually specific inquiry (if not an open question) whether a dismissal based on sovereign immunity is one based on a lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) or one based on a failure to state a claim under Fed. R. Civ. P. 12(b)(6)." *Weaver v. N.Y. St. Unified Ct. Sys.*, No. 1:23-CV-1518 (GTS/DJS), 2024 WL 3066906, at *6 (N.D.N.Y. June 20, 2024) (comparing cases). Other than impacting whether the dismissal on sovereign immunity grounds is with or without prejudice, the distinction is not material on these motions. *See Crichlow v. Doccs*, No. 18-CV-03222 (PMH), 2022 WL 6167135, at *6 (S.D.N.Y. Oct. 7, 2022) ("Although Moving Defendants do not reference Rule 12(b)(1) as a ground for their motion to dismiss, the 'distinction has no practical effect' in this case because whether brought under either subdivision, the Court considers on this motion 'only the pleadings and the relevant state and federal law and has drawn all inferences in Plaintiff's favor.'" (quoting *Harrison v. New York*, 95 F. Supp. 3d 293, 313 (E.D.N.Y. 2015))).

*Graham*, 473 U.S. 159, 167 n. 14 (1985)).  "State sovereign immunity not only extends to the state itself, but to state agencies that constitute 'arms of the State.'"  *Barry v. City Univ. of N.Y.*, 700 F. Supp. 2d 447, 452 (S.D.N.Y. 2010) (quoting *N. Ins. Co. of N.Y. v. Chatham County, Ga.*, 547 U.S. 189, 193 (2006)).  Sovereign immunity bars claims for monetary damages and retrospective injunctive relief.  *Constantino-Gleason v. Unified Ct. Sys.*, No. 21-CV-6327 (JLS), 2023 WL 4052302, at *8 (W.D.N.Y. June 16, 2023).

The claims Plaintiffs assert in their complaint implicate principles of sovereign immunity.  "It is well established that New York State has not waived its sovereign immunity from Section 1983 claims," *Harrison v. New York*, 95 F. Supp. 3d 293, 314 (E.D.N.Y. 2015) (quotation omitted), and Congress did not override that immunity by enacting § 1983, *see also Goonewardena v. N.Y.*, 475 F. Supp. 2d 310, 329 (S.D.N.Y. 2007) ("The State of New York has not waived its sovereign immunity in regard to section 1983 actions nor has its sovereign immunity been abrogated.").  "The New York State Unified Court System is 'unquestionably an arm of the state' that shares in New York's immunity to suit."  *Bythewood v. New York*, No. 22-2542-CV, 2023 WL 6152796, at *1 (2d Cir. Sept. 21, 2023) (quoting *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009)).  Moreover, "Eleventh Amendment immunity extends to state officials 'working on behalf of the state (*i.e.* in their official capacities).'"  *Kellogg v. Nichols*, No. 1:23-CV-658, 2023 WL 8046892, at *3 (N.D.N.Y. Nov. 21, 2023) (quoting *Kisembo v. NYS Off. of Child. & Fam. Servs.*, 285 F. Supp. 3d 509, 519 (N.D.N.Y. 2018)).

Plaintiffs' claims against Justice Martoche and Justice Slisz, both sued in their official capacities, and those asserted against the Erie County Supreme Court, that seek

monetary damages and retrospective injunctive relief are barred by principles of sovereign immunity. *McNair v. Utica Police Dep't*, No. 623CV699(DNH/ATB), 2023 WL 4935993, at *3 (N.D.N.Y. June 26, 2023) ("Because the Oneida County Court is a part of the New York State Unified Court System, it is entitled to sovereign immunity. Similarly, judges within the New York State Unified Court System are entitled to Eleventh Amendment immunity to the extent they are sued in their official capacity."), *report and recommendation adopted*, 2023 WL 4931609 (N.D.N.Y. Aug. 1, 2023).

## III. ***Rooker-Feldman* and *Younger* Abstention**

All Defendants argue that to the extent Plaintiffs' claims ask this Court to overturn state court orders or intervene in ongoing state court matters, such claims are barred by the *Rooker-Feldman* and *Younger* abstention doctrines. The Court agrees.

"The *Rooker-Feldman* doctrine bars 'federal courts from exercising jurisdiction over claims brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* at *3 (quoting *Sykes v. Mel S. Harris and Assoc. LLC*, 780 F.3d 70, 94 (2d Cir. 2015)). "[T]he *Rooker Feldman* doctrine has four requirements: (1) the plaintiff must have lost in state court; (2) the loss must have occurred before the district court proceedings commenced; (3) the plaintiff must complain of injuries caused by a state court judgment; and (4) the plaintiff must invite district court review and rejection of that judgment." *Id.* (citing *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005)). To the extent Plaintiffs seek to overturn final divorce and custody orders that have already been issued by the state court, any such claims

would be barred by the *Rooker-Feldman* doctrine. *Dudley v. Hochul*, No. 5:24-CV-0048 (DNH/ML), 2024 WL 1906594, at *4 (N.D.N.Y. May 1, 2024) (holding that *Rooker-Feldman* applies when "a litigant seeks relief that invites a federal district court to reject or overturn a final decision of a New York Family Court as to a child support dispute brought in that state court"), *report and recommendation adopted*, 2024 WL 2399913 (N.D.N.Y. May 23, 2024); *Masri v. Liebowitz*, No. 1:24-CV-1284 (LTS), 2024 WL 1639904, at *7 (S.D.N.Y. Apr. 15, 2024) ("Inasmuch as Plaintiff criticizes any final decisions of the Orange County Family Court and/or the Orange County Supreme Court in an effort to request that this Court overturn any of those courts' final decisions, the *Rooker-Feldman* doctrine bars this Court from granting him such relief.").

Alternatively, to the extent that the state court proceedings remain pending, Plaintiffs' claims for declaratory or injunctive relief are barred by the abstention doctrine set out in *Younger v. Harris*, 401 U.S. 37 (1971). "*Younger* abstention is required when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Morpurgo v. Incorp. Vill. of Sag Harbor*, 327 F. App'x 284, 285 (2d Cir. 2009) (citation omitted). Without special circumstances showing bad faith, harassment, or serious and immediate irreparable injury, intervention is not permitted. *Gibson v. Berryhill*, 411 U.S. 564, 573-74 (1973) (citing *Younger,* 404 U.S. 37).

As to the first condition, "*Younger* applies if the federal action involves ongoing: (1) 'state criminal prosecutions'; (2) 'civil proceedings that are akin to criminal

prosecutions'; or (3) civil proceedings that 'implicate a State's interest in enforcing the orders and judgments of its courts.'" *Torres v. Gaines*, 130 F. Supp. 3d 630, 636-37 (D. Conn. 2015) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013)). "Both the Supreme Court and the Second Circuit have observed that a 'state-initiated proceeding to gain custody of children allegedly abused by their parents' falls within the second category." *Id*. (citing *Davis v. Baldwin*, 594 F. App'x 49, 51 (2d Cir. 2015)). "If the federal action falls into one of these three categories, a Court may then consider the additional factors . . . [of] whether the state interest is vital and whether the state proceeding affords an adequate opportunity to raise the constitutional claims." *Id*.

Turning to the additional conditions for application of the *Younger* abstention doctrine, it is well settled that "a custody dispute . . . raises important state interests." *Amato v. McGinty*, No. 1:17-CV-593 (MAD/ATB), 2017 WL 9487185, at *10 (N.D.N.Y. June 6, 2017) (citation and quotations omitted), *report and recommendation adopted*, 2017 WL 4083575 (N.D.N.Y. Sept. 15, 2017); *Reinhardt v. Commonwealth of Mass. Dep't of Soc. Servs.*, 715 F. Supp. 1253, 1256 (S.D.N.Y. 1989) (explaining that "there can be no doubt that a custody dispute that involves allegations of sexual abuse raises important state interests," and noting that "[q]uestions of family relations, especially when issues of custody and abuse are involved, are traditionally an area of state concern"). Moreover, Plaintiffs may raise these claims in the state proceedings. *Id*.

Put simply, Plaintiffs' request that this Court intervene in the state court proceeding to deem its orders unenforceable and direct Justice Martoche to recuse herself involve matters directed to the state's compelling interest and are appropriately addressed in that

proceeding. *See, e.g.*, *Masri*, 2024 WL 1639904, at *6 ("To the extent that Plaintiff asks this Court to intervene in any his pending state court child-custody, child-support, and/or divorce proceedings, he has not alleged any facts showing that bad faith, harassment, or irreparable injury that is both serious and immediate has occurred with respect those proceedings. Thus, . . . the Court dismisses such claims under the *Younger* abstention doctrine."); *Curcio v. Grossman*, No. 22 CV 1648 (VB), 2022 WL 767167, at *7 (S.D.N.Y. Mar. 14, 2022) ("to the extent that Plaintiff asks this Court to intervene in [her pending state-court child-custody] . . . proceeding, the Court also dismisses those claims under the *Younger* abstention doctrine"); *Walker*, 2020 WL 3503158, at *4 (where the plaintiff challenged a temporary order in an ongoing child custody dispute, alleging that the temporary custody order was gained under "lies and false pretenses and therefore should be considered invalid," finding application of *Younger* abstention barred the plaintiff's federal claims for injunctive relief).

## IV.   **Improper Service**

Attorney Trigilio and the Erie County Supreme Court challenge the sufficiency of service upon them. The Court agrees that Plaintiffs have not established that the Court has personal jurisdiction over these parties.

### A.   **Service On Attorney Trigilio**

Pursuant to Fed. R. Civ. P. 4(e), Plaintiffs could effectuate service on Attorney Trigilio by any of the following means:

(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2) doing any of the following:
(A) delivering a copy of the summons and of the complaint to the individual personally;
(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).  In addition, Rule 4(l) provides that "[u]nless service is waived, proof of service must be made to the court."  Fed. R. Civ. P. 4(l); *see also* L.R. Civ. P. 4 ("Proof of service shall be filed with the Clerk of Court.").

Service of process in New York is governed by section 308 of the Civil Practice Law and Rules ("CPLR").  Under this statute, service can be made upon an individual defendant by delivering the summons on the person to be served, CPLR 308(1), or pursuant to CPLR 308(2), service can be made "by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business[.]"  CPLR 308(2).  "In New York, a process server's affidavit of service establishes a prima facie case of the account of the method of service, and thus, in the absence of contrary facts, [it is] presume[d] that [defendant] was properly served with the complaint."  *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002).

"New York courts have construed 'actual place of business' to include (1) a place where the defendant regularly transacts business, or (2) an establishment that the defendant owns or operates, where there is a clear identification of the work performed by her within

that place of business." *Maldonado v. Arcadia Bus. Corp.*, No. 14CV4129(DLI)(RML), 2015 WL 12791329, at *2 (E.D.N.Y. Aug. 27, 2015) (quoting *Warshun v. New York Cmty. Bancorp., Inc.*, 957 F. Supp. 2d 259, 266 (E.D.N.Y. 2013)).  The New York statute also directs that the summons be left with an individual of "suitable age and discretion."  CPLR 308(2).  To be of suitable age and discretion, the "person 'must objectively be of sufficient maturity, understanding and responsibility under the circumstances so as to be reasonably likely to convey the summons to the defendant.'"  *Id.* at *2 (quoting *Entm't by J&J, Inc. v. Las Hermanas Rest., Inc.*, No. 02 CV 1119, 2006 WL 3711565, at *2 (S.D.N.Y. Dec. 14, 2006)).

Attorney Trigilio submitted a declaration acknowledging that a copy of the summons and complaint was left with a secretary at his office.  (Dkt. 11-2 at ¶ 3).  He does not challenge that the secretary was a person of suitable age and discretion or that the delivery location was not his actual place of business.  But he argues that Plaintiffs did not comply with the additional requirement of CPLR 308(2), which directs that a copy of the summons and complaint be mailed to the individual's residence or place of business.  Attorney Trigilio's declaration indicates that he never received a copy of summons and complaint by mail and therefore, Plaintiffs' service on him was not properly perfected.  (*Id.* at ¶ 4).[3]  There being no evidence before the Court establishing otherwise, Attorney Trigilio's motion to dismiss on this alternative basis is accordingly granted.

---

[3]    Plaintiffs have not filed proof of service with the Court, as required.  While this does not affect the validity of otherwise sufficient service, this failure, coupled with Plaintiffs' lack of response to the motion to dismiss, leaves the Court with no information to demonstrate that Plaintiffs properly served Attorney Trigilio.

**B.  Service on the Erie County Supreme Court**

The Erie County Supreme Court similarly argues that Plaintiffs' failure to properly serve it requires dismissal of the claims against it for lack of personal jurisdiction.  Again the Court agrees.

> Service on a state or local government is governed by Rule 4(j)(2) which provides:
>
> A state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by:
> (A) delivering a copy of the summons and of the complaint to its chief executive officer; or
> (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant.

Fed. R. Civ. P. 4(j)(2).

CPLR 307 provides that "[p]ersonal service on a . . . state agency, which shall be required to obtain personal jurisdiction over such an officer or agency, shall be made by (1) delivering the summons to such officer or to the chief executive officer of such agency or to a person designated by such chief executive officer to receive service, or (2) by mailing the summons by certified mail, return receipt requested, to such officer or to the chief executive officer of such agency, and by personal service upon the state in the manner provided by subdivision one of this section."  CPLR 307.

Erie County Supreme Court Chief Clerk Billie Jo Zakia submitted a declaration indicating that she received Plaintiffs' complaint on October 26, 2023.  (Dkt. 3-2 at ¶ 4).  She notes that Erie County Supreme Court is one of many courts in the New York State Unified Court System.  (*Id.* at ¶ 2).  There being no evidence that Ms. Zakia is the chief executive officer of the State agency Unified Court System, or the chief executive officer's

designee for service of process, Plaintiffs have not proved that their service on the Erie County Supreme Court was effective.  *Sutter v. Dibello*, No. 18-CV-817(SJF)(AKT), 2021 WL 930459, at *9 (E.D.N.Y. Mar. 10, 2021) ("Since plaintiff does not allege, much less establish, that service was made in accordance with the method of service prescribed by New York law, *i.e.*, by personal delivery to the chief executive officer of [Unified Court System] or his or her designee, or by certified mail to the chief executive officer and personal delivery to an assistant attorney general or to the New York attorney general, plaintiff has not made a prima facie showing of jurisdiction.").  For these reasons, the Erie County State Court's motion to dismiss for lack of personal jurisdiction is granted.

## V.      <u>**Absolute Judicial Immunity**</u>

Plaintiffs' claims against Justice Martoche and Justice Slisz are also barred on the basis of absolute judicial immunity, and thus to the extent that the Court retains jurisdiction over the claims, they are dismissed with prejudice on the merits.  *See Wang v. Delphin-Rittmon*, 664 F. Supp. 3d 205, 216 (D. Conn. 2023) (dismissal based on judicial immunity is on the merits under Rule 12(b)(6)).  "Judicial immunity protects conduct taken as part of all judicial acts except those performed in the clear absence of jurisdiction."  *Walker v. Family Ct. Judge Catherine Cholakis*, No. 1:19-CV-1288 (LEK/CFH), 2020 WL 3503158, at *6 (N.D.N.Y. June 29, 2020) (quotations and citations omitted).  All of Plaintiffs' claims against Justice Martoche and Justice Slisz stem from alleged actions taken in connection with the divorce and child custody proceedings.

Accordingly, the State Defendants' motion to dismiss Plaintiffs' claims against Justice Martoche and Justice Slisz is granted on this basis as well.  *See id.* at *7 (explaining

that judge had "absolute judicial immunity for all judicial actions that occurred within her judicial capacity" of determining the proper custody for the plaintiff's children and noting that immunity applies "even when the judge is accused of acting maliciously and corruptly" (citation omitted)).

## VI.   <u>The Non-State Defendants are Not State Actors</u>

If the Court retains jurisdiction over any of Plaintiffs' claims against Leach, Attorney Kadish, and Attorney Trigilio, those defendants are not state actors and were not acting under color of state law.  "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'"  *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 941 F.2d 1292, 1295 (2d Cir. 1991); *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50 (1999) (Section 1983 "excludes from its reach merely private conduct, no matter how discriminatory or wrongful."); *Washington v. Cnty. of Rockland*, 373 F.3d 310, 315 (2d Cir. 2004) ("Section 1983 authorizes a court to grant relief when a party's constitutional rights have been violated by a slate or local official or other person acting under color of state law.").

Privately retained attorneys do not act under color of state law for purposes of § 1983.  *See D'Amato v. Rattoballi*, 83 F. App'x 359, 360 (2d Cir. 2003) (district court properly dismissed claim against plaintiff's former lawyer because former lawyer was a privately retained attorney not acting under color of state law); *Daniels v. Ferrell*, No. 11-cv-4597 (SJF) (AKT), 2012 WL 482136 at *2 (E.D.N.Y. Feb. 10, 2012) ("Generally,

attorneys, whether court-appointed or privately retained, are not state actors for purposes of Section 1983.").   Attorney Trigilio and Attorney Kadish were privately retained attorneys in the divorce and custody proceedings and not state actors who can be held liable for alleged violations of Plaintiffs' constitutional rights.  *Lewis v. Walsh*, No. 8:24-CV-00098 (GTS/CFH), 2024 WL 2835269, at *5 (N.D.N.Y. June 4, 2024) ("[A] private attorney's legal representation of a private person, however, does not constitute state action for the purpose of stating a claim under [§] 1983 against that attorney, regardless of whether that attorney is privately retained, court-appointed, or employed as a public defender." (quoting *Masri*, 2024 WL 1639904, at *9)).   Similarly, there is no basis to conclude that Leach, Plaintiff's former spouse, was a state actor or acting under color of state law. *Pappas v. Lorintz*, 832 F. App'x 8, 13 (2d Cir. 2020) (holding that plaintiff's ex-spouse and her attorney were "not state actors, nor were they 'acting under color of state law,' and therefore are not subject to a § 1983 claim" (quoting *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014))); *Errato v. Seder*, No. 3:22-CV-793 (SVN), 2023 WL 2743284, at *5 (D. Conn. Mar. 31, 2023) (dismissing § 1983 claim against ex-spouse and her attorney where "[p]laintiff has failed to allege that either [the ex-spouse] or the Attorney Defendants acted under color of state law"), *aff'd*, No. 23-638, 2024 WL 726880 (2d Cir. Feb. 22, 2024).

While a private actor may be held liable under § 1983 when a plaintiff can show that the private actor entered into a conspiracy with a state actor to deprive that plaintiff of his constitutional rights, *see Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002), no such allegations have been plausibly alleged here.  The Second Circuit has made

it clear that "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Id.*  Although Plaintiffs allege that Attorney Trigilio, Attorney Kadish, and Leach were acting in collusion with the State Defendants, this conclusory allegation is not supported by any factual allegations.  *Hudson v. Gioe*, No. 24-CV-1695(JMA)(ST), 2024 WL 3202857, at *5 (E.D.N.Y. June 26, 2024) ("Here, Plaintiff includes no factual allegations from which the Court could reasonably construe state action by Gioe through joint action or a conspiracy with a state actor to deprive Plaintiff of his constitutional rights.").  Because Plaintiffs have failed to state a viable § 1983 conspiracy claim against Leach,[4] Attorney Kadish, or Attorney Trigilio, the claims against these parties fail to state a claim upon which relief may be granted.

## CONCLUSION

For these reasons, the motion to dismiss by the State Defendants (Dkt. 3), motion to dismiss by Attorney Kadish (Dkt. 6), motion to dismiss by Attorney Trigilio (Dkt. 11), and

---

[4]     In her memorandum of law, Leach also requests that the Court require Plaintiff to pay the attorneys' fees she has incurred and to direct him to provide a jurisdictional basis before filing any further actions against Leach.  (Dkt. 13-3 at 12).  The Court has grave concerns over the conduct of Plaintiff—an attorney admitted to practice before this Court—in initiating this action and then failing to respond to the pending motions.  But if Leach or any other defendant intends to pursue a request for sanctions or other appropriate relief, it must be requested through a separately filed and properly supported motion.  And of course, any such motion must set forth appropriate legal grounds for the relief sought. *Cf. Langdon v. County of Columbia*, 321 F. Supp. 2d 481, 484 (N.D.N.Y. 2004) ("Because 'a Rule 11 motion cannot be made unless there is some paper, claim, or contention that can be withdrawn, it follows that a party cannot wait to seek sanctions until after the contention has been judicially disposed.'") (citation omitted).

motion to dismiss by Leach (Dkt. 13) are all granted.  Plaintiffs' complaint is dismissed without prejudice based on the jurisdictional grounds discussed above, but to the extent the Court retains jurisdiction over the claims, they are dismissed with prejudice for the reasons discussed above.  The Clerk of Court is directed to enter judgment and close the case.

   SO ORDERED.

              ELIZABETH A. WOLFORD
              Chief Judge
              United States District Court

Dated:  July 22, 2024
   Rochester, New York